UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JOSHUA MICHAEL HAVENS** | **CIVIL ACTION NO. 23-1244** |
| | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **MOREHOUSE PARISH JAIL, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Joshua Michael Havens, a pre-trial detainee at Morehouse Parish Jail proceeding pro se and in forma pauperis, filed this proceeding on approximately September 8, 2023, under 42 U.S.C. § 1983. He names Morehouse Parish Jail and Nurse Pennington as defendants.[1] For reasons below, the Court should retain Plaintiff's claim that Nurse Pennington failed to provide constitutionally adequate medical care. The Court should dismiss Plaintiff's remaining claims.

### Background[2]

Plaintiff was "initially diagnosed about 2016 with seizures" at a clinic in Gray's Harbor, Washington. [doc. # 18, p. 1]. In 2019, Dr. Spires prescribed Plaintiff Keppra (Levetiracetam). *Id.* Plaintiff states, "all [of his medical records] but my jail records state I use medical marijuana and take Keppra when [medical marijuana] is not available." *Id.*

Plaintiff suggests that he asked Nurse Pennington to administer his seizure medication, Keppra, which a sergeant and a corporal "retrieved" from Dr. Spires. [doc. #s 1, p. 4; 11, p. 1].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] At this stage of the proceeding, the undersigned construes Plaintiff's somewhat tangled allegations liberally and in his favor.

He alleges that Pennington refused to administer the medication—or "any seizure" medication—and informed him that he did "not have a seizure disorder." [doc. #s 1, p. 5; 11, p. 1].

After "several months without [his] cannabis or Keppra, [Plaintiff's] THC/CBD levels dropped, as did [his] levetiracetam, and [he] experienced [his] first seizure while incarcerated" in February 2023. [doc. # 18, pp. 1-2]. He lost consciousness. [doc. # 11, p. 1]. While Plaintiff alleges he lacked cannabis and Keppra for several months, he clarifies that his seizure occurred "just after requesting Keppra, by request form[.]" [doc. # 18, p. 2].

On an unidentified date, Pennington allegedly "forced a urinalysis[,]" claiming that Plaintiff was "on drugs[.]" [doc. # 11, p. 1]. Plaintiff "passed" the urinalysis. *Id.*

Plaintiff suggests that later, and "weeks prior" to a second seizure (detailed below), he again asked Pennington to administer Keppra or Abilify, but Pennington refused, telling him that he did not have a seizure disorder and that he was malingering. [doc. #s 1, p. 4; 11, p. 1; 18, p. 2]. In June or July 2023, Plaintiff had another seizure and lost consciousness while he was "at a urinal." [doc. # 11, p. 1]. He was transported "out on a wheelchair." *Id.* He claims that Nurse Pennington assigned him to "lockdown" after the second seizure, asserting that Plaintiff was malingering. [doc. #s 1, p. 4; 11, p. 1]. The lockdown added "insult to injury[.]" [doc. # 11, p. 1].

Plaintiff claims that Pennington's refusal to provide his medication after he requested it caused his seizures. [doc. #s 1, p. 5; 11, p. 1]. He alleges, "The nurse never provided any care, neither post nor pre-episode." [doc. # 18, p. 2]. He adds that he was not "listened to about [his] medical history, doctor's orders, and actual prescriptions, including the Keppra, Abilify, and medical marijuana." *Id.*

2

Later, Plaintiff was transferred to Eastern Louisiana Mental Health, where he "was re-diagnosed with a seizure disorder" and obtained Abilify. [doc. # 11, p. 1]. That said, Plaintiff was later transferred back to Morehouse Parish Jail, and he does not indicate if he is currently receiving medication.

Plaintiff seeks (1) monetary compensation and (2) "proper bedside manner and medical treatment" for ill patients "when proof is presented before the nurse." [doc. # 1, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official

5

"refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff plausibly alleges that he had a serious medical need for his prescribed seizure medication. *See generally Newberry v. Melton*, 726 F. App'x 290, 295 (6th Cir. 2018) ("Newberry's condition—characterized by frequent, often lengthy, and aggressive convulsions—is sufficiently obvious" to constitute a serious medical need).

As to Nurse Pennington's alleged knowledge of the harm to which Plaintiff was exposed, Plaintiff's allegations are thinner. For instance, he suggests Pennington may not have known of his risk exposure because his "jail records" did not "state" that he used medical marijuana and Keppra. Similarly, if Pennington truly thought Plaintiff was malingering or feigning injury, she

6

did not know of a substantial risk of serious harm.[4, 5] Likewise, Plaintiff does not allege that he presented to Pennington with any symptoms (at least the first time he requested medication).

Conversely, Plaintiff does: (i) suggest he told Pennington "about [his] medical history, doctor's orders, and actual prescriptions, including the Keppra, Abilify, and medical marijuana";[6] (ii) state that a sergeant and a corporal "retrieved Keppra from Dr. Spires" and that Pennington failed to "administer" it;[7] (iii) allege that he had a seizure after his first request for medication, yet Pennington still alleged he was malingering and still refused to provide his medication; and (iv) allege that he passed a urinalysis test, which tentatively suggests: (a) Pennington could have eliminated illicit drug use as a cause of Plaintiff's first seizure; (b) the likelihood that Plaintiff required medication increased; and (c) Pennington knew of Plaintiff's first seizure. Construing the allegations liberally and in Plaintiff's favor, he plausibly alleges that Pennington knew of a substantial risk of serious harm.

Finally, Plaintiff plausibly alleges that Pennington was deliberately indifferent as she failed to provide any of his medications and never "provided any care" before or after his seizures.[8] *See Hudson v. McHugh,* 148 F.3d 859, 863-64 (7th Cir.1998) (jail officers' and

---

[4] It is unclear if Pennington accused Plaintiff of feigning seizures, feigning a need for medication, of feigning something else.

[5] *See Cleveland v. Bell*, 938 F.3d 672 (5th Cir. 2019) (noting that "actual knowledge is an essential element" and finding, where a nurse thought there was nothing wrong with Cleveland and believed he was faking illness, that the nurse did not draw the inference that Cleveland was experiencing a life-threatening medical emergency); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (finding no deliberate indifference where a defendant did not believe the plaintiff's threats of suicide).

[6] [doc. # 18, p. 2].

[7] *Id.* at 5.

[8] *Id.* at 2.

nurse's refusal to do anything about prisoner's repeated requests for epilepsy medicine despite knowing he did not have his medicine constituted deliberate indifference to serious medical need); *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018) ("[T]he denial of recommended medical treatment is often sufficient to show deliberate indifference.").

The Court should retain this claim.

### 3. Morehouse Parish Jail

Plaintiff names Morehouse Parish Jail as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

Morehouse Parish Jail does not qualify as a juridical person; accordingly, the Court should dismiss Plaintiff's claims against Morehouse Parish Jail.

### 4. Conditions of Confinement

Plaintiff claims that after his second seizure, Nurse Pennington assigned him to "lockdown" for two weeks, maintaining that he was malingering. [doc. #s 1, p. 4; 11, p. 1]. The lockdown added "insult to injury[.]" [doc. # 11, p. 1]. He claims that Pennington's action constituted cruel and unusual punishment. *Id.*

Plaintiff's conditions-of-confinement claim is, however, conclusory and does not amount to a plausible claim. He does not, for example, describe the conditions in lockdown or allege: (a) that he suffered any harm from lockdown; (b) that Pennington knew of yet disregarded a substantial risk of serious harm from the conditions in lockdown; (c) that lockdown deprived him

8

of an identifiable human need[9]; or (d) that Pennington assigned him to lockdown with the intent to punish him.[10, 11]  The Court should dismiss this claim.[12]

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Joshua Michael Havens' conditions-of-confinement claim and claims against Morehouse Parish Jail be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

---

[9] Insofar as Plaintiff's claim qualifies as an "episodic act or omission" the Court focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645 (5th Cir. 1996).  "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015).

[10] To the extent Plaintiff's claim qualifies as a conditions-of-confinement claim, the court must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[]" or whether the conditions are "but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

[11] A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

[12] Plaintiff does not claim that Pennington deprived him of procedural due process before or after assigning him to lockdown.

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of December, 2023.

_____
Kayla Dye McClusky
United States Magistrate Judge